EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍCTOR QUIÑONES RAMOS, acusado y apelante.

Número 15289.

*Sometido:* 14 de noviembre de 1952. *Resuelto:* 2 de diciembre de 1952.

*José Veray, Jr.,* abogado del apelante; *Hon. Juan B. Fernández Badillo, Secretario de Justicia Interino (Víctor Gutiérrez Franqui, Exsecretario de Justicia,* en el alegato) y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

La única cuestión a resolver en este recurso es si la Ley de Armas de Puerto Rico—Ley núm. 17 de 19 de enero de 1951 (Leyes de 1950–51, pág. 427)—es *ex post facto*, porque en su artículo 4 convierte en delito grave (*felony*) la portación de un arma por una persona que haya sido convicta de delito grave (*felony*) antes de comenzar a regir dicha ley.

Contra el apelante se radicó en la Sección de Aguadilla del anterior Tribunal de Distrito de Puerto Rico una acusación que en lo pertinente lee así:

"El referido acusado, Víctor Quiñones Ramos, allá en o por el día 20 de mayo de 1951, y en Aguadilla, P. R., que forma parte del Tribunal de Distrito de Puerto Rico, Sección de Aguadilla, P. R., ilegal y voluntariamente portaba y conducía un cuchillo, siendo dicho cuchillo, un arma mortífera con el cual podía causarse grave daño corporal y hasta la muerte, sin que dicha portación fuese en ocasión de su uso como instrumento propio de un arte, deporte, profesión, ocupación u oficio.

"Alega además el Fiscal que este mismo acusado, Víctor Quiñones Ramos, fué sentenciado por la Corte de Distrito de Aguadilla, P. R., a cumplir un año de presidio por un delito de Violación, en 25 de junio de 1941, sentencia que cumplió el acusado, es firme y no fué apelada."

El acusado solicitó en el tribunal a quo la eliminación del último párrafo de la acusación, o sea, aquél en que se le imputa haber sido convicto anteriormente de un delito de violación, aduciendo como fundamento de tal solicitud que la referida alegación convierte en delito grave (*felony*) el expuesto en la acusación cuando normalmente sería un delito menos grave (*misdemeanor*) y que de subsistir dicha alegación se le estaría dando a la Ley de Armas efecto retroactivo, convirtiéndola, por tanto, en *ex post facto*. Desestimada su solicitud se celebró el correspondiente juicio oral en los méritos y el tribunal a quo declaró culpable al acusado

y lo sentenció a cumplir una pena no menor de un año ni mayor de año y medio de presidio. Contra esa sentencia interpuso el presente recurso de apelación señalando como único error cometido, el siguiente:

"El Tribunal de Distrito de Puerto Rico, Sección de Aguadilla, cometió manifiesto error al declarar convicto al acusado de una Infracción al artículo 4, de la Ley núm. 17, aprobada el 19 de enero de 1951, conocida como Ley de Armas de Puerto Rico, calificando el delito de Portar Armas como un delito de carácter *felony* en vez de un delito de carácter menos grave."

 El artículo 4 de la Ley de Armas de Puerto Rico, (¹) que se alega infringió el acusado, lee así:

"Toda persona que posea, porte o conduzca cualquier arma de las comúnmente conocidas como 'black jacks', cachiporras o manoplas; toda persona que porte o conduzca cualquier arma de las conocidas como cuchillo, puñal, daga, espada, honda, bastón de estoque, arpón, faca, estilete, punzón o cualquier instrumento similar, y excepto cuando se portaren o condujeren en ocasión de su uso como instrumentos propios de un arte, deporte, profesión, ocupación u oficio, e incluyendo además las hojas de navajas de afeitar de seguridad y garrotes cuando éstos se sacaren, mostraren o usaren en la comisión de un delito público o en la tentativa de cometerlo; y toda persona que usare contra otra cualquiera de las armas nombradas anteriormente en este artículo será culpable de delito menos grave (*misdemeanor*), y si ha sido convicta previamente de cualquier infracción a esta Ley, o de cualquiera de los delitos especificados en el artículo 17 de la misma, será culpable de delito grave· (*felony*)."

El artículo 17 del mismo cuerpo legal dispone:

"El Jefe de la Policía de Puerto Rico no expedirá licencia para tener y poseer un arma de fuego a persona alguna que haya sido convicta, en o fuera de Puerto Rico, de cualquiera de los siguientes delitos o de tentativa para cometer los mismos: asesinato en cualquier grado, homicidio voluntario, secuestro, violación, mutilación, ataque con intención de cometer asesi-

(¹) Ley núm. 17, aprobada en 19 de enero de 1951. Esta Ley ha sido enmendada posteriormente pero dichas enmiendas no afectan los artículos que discutimos, ni el problema legal envuelto en este recurso.

nato u homicidio, acometimiento y agresión grave, cuando este delito se haya realizado con un arma cortante, punzante o de fuego, robo, escalamiento, hurto, incendio malicioso, incesto, infracción a la Ley núm. 53 de 10 de junio de 1948, según ha sido enmendada, o infracción a la Ley núm. 220 de 15 de mayo de 1948, según ha sido enmendada, o infracción al artículo 371 del Código Penal, ni a ninguna persona que sea un desequilibrado mental, un ebrio habitual o que sea adicto al uso de narcóticos o drogas, ni a ninguna persona que haya sido convicta por violación a las disposiciones de esta Ley."

Arguye el apelante que en términos generales, toda ley que en relación con el delito o sus consecuencias altere la situación del acusado, perjudicándole, es *ex post facto*. Al efecto cita, entre otros, el caso de *Fernández* v. *Rivera, Jefe de Presidio*, 70 D.P.R. 900, donde resumimos la doctrina sobre esta materia señalando que es *ex post facto*:

"1. Toda ley que considera criminal y que castiga un acto que al ser realizado era inocente;

"2. Toda ley que agrava un delito o lo hace mayor de lo que lo era al momento de ser cometido;

"3. Toda ley que altera el castigo y que impone una pena mayor que la fijada al delito al momento de ser cometido; y

"4. Toda ley que altera las reglas de evidencia, y que exige menos prueba o prueba distinta a la exigida por la ley al momento de la comisión del delito para castigar al acusado."

Continúa argumentando el apelante, y ésta es la posición que asume, que la Ley de Armas en su artículo 4, altera su situación, en su perjuicio, al disponer un castigo mayor y agravar el delito por el solo hecho de haber sido el acusado convicto previamente de un delito de violación cometido varios años antes de comenzar a regir la Ley de Armas. Tal disposición de ley constituye, a su juicio, una violación de la cláusula *ex post facto* contenida en el párrafo 8 del artículo 2 de la Carta Orgánica, entonces en vigor, y la cual disponía que: "No se aprobará ninguna ley *ex post facto* . . ."

No tiene razón el apelante. Él fué sentenciado por una infracción a la Ley de Armas, cometida después de estar en

vigor dicha ley. No ha sido castigado por el delito anterior de violación sino por el delito subsiguiente. Lo que ocurre es que la Ley de Armas autoriza que se tome en consideración la conducta anterior del acusado a los fines de fijar la naturaleza del delito y de la pena. La convicción anterior no constituye un nuevo delito sino que meramente sitúa al acusado dentro de una clase específica para la cual la ley fija una pena mayor.

La doctrina que excluye las leyes de esta naturaleza de la cláusula *ex post facto*, ha sido expuesta en la siguiente forma:

"Un estatuto que provea castigo para futuras ofensas y permita tomar en consideración la anterior conducta del ofensor y graduar su castigo de acuerdo con la misma, no está sujeto a objeción como *ex post facto*. Frecuentemente se proveen por ley castigos más severos para una segunda o subsiguiente ofensa que el provisto para la primera. Al proveer castigos más severos, no se ha considerado como sujeto a objeción el hecho de que la previa convicción que se permite sea tomada en consideración ocurriera antes de que el estatuto fuera promulgado. En tal caso, la segunda o subsiguiente ofensa, y no la primera, es la que se castiga; ..." (Escolios omitidos.) (Cooley's *Constitutional Limitations* (octava edición) pág. 553.)

"Un estatuto que provee que el castigo a imponerse a un delincuente deberá aumentarse si ha sido previamente convicto no es *ex post facto* por el hecho de que se aplique a casos en que la previa convicción o convicciones ocurrieran con anterioridad a su promulgación; ..." (16 C.J.S. pág. 901, sección 450.)

En el caso de *People* v. *James*, 235 Pac. 81 (1925), se atacó la constitucionalidad de la Ley de Armas de California por el fundamento de que era *ex post facto*. Aquel estatuto prohibía a ciertas personas, entre ellas, a los ex-convictos de delito "*felony*", poseer o tener bajo su custodia o control cualquier pistola, revólver y armas de fuego que pudieran llevarse ocultas sobre la persona. Al sostener la validez de

ese estatuto, la Corte de Distrito de Apelaciones de aquel Estado, se expresó así:

"Por los propios términos de la ley, el acusado está excluído del derecho a poseer o ser dueño de armas de fuego, y está dentro de los poderes de la Legislatura el decir que tal posesión o dominio por una persona que ha sido convicta de un felony pueda ser perjudicial al bienestar público y el prescribir un castigo para ello. *Ex parte Rameriz,* 193 Cal. 633, 226 Pac. 914, 918, 34 A.L.R. 51. Mediante el proceso seguídole por el presente delito, el acusado no está siendo otra vez castigado por su anterior ofensa, mas su convicción por el anterior delito crea una condición a virtud de la cual la comisión por él posteriormente de otro y diferente acto lo sujeta a ser procesado por el mismo. La anterior convicción de por sí, no constituye un nuevo delito, sino que meramente coloca al acusado dentro de una clase apta para cometer el delito por el cual se le acusa. *People* v. *King,* 64 Cal. 340, 30 Pac. 1028; *People* v. *Stanley,* 47 Cal. 113, 17 Am. Rep. 401. En conexión con esto debe observarse que ciudadanos extranjeros, que no tienen el estigma de una previa convicción, la ley los coloca dentro de la misma incapacidad. Parece ser claro que la prohibición en cuanto a ser dueño o poseedor de cierta clase de armas de fuego tiene relación con el *status* de las personas afectadas.

"La constitucionalidad de la ley también se ataca por el fundamento, según se alega, de que es una ley *ex post facto* y retroactiva en su operación de ser interpretada como que se aplica a la imputación que ahora se le hace al acusado, toda vez que la alegada convicción anterior ocurrió antes de que la presente Ley entrara en vigor.

"Un estatuto que provea castigo para futuras ofensas y permita tomar en consideración la anterior conducta del ofensor y graduar su castigo de acuerdo con la misma, no está sujeto a objeción como *ex post facto*. Frecuentemente se proveen por ley castigos más severos para una segunda o subsiguiente ofensa que el provisto para la primera. Al proveer castigos más severos, no se ha considerado como sujeto a objeción el hecho de que la previa convicción que se permite sea tomada en consideración ocurriera antes de que el estatuto fuera promulgado. *Ex parte Gutiérrez,* 45 Cal. 429; *Rand* v. *Commonwealth,* 9 Grat. (Va.) 738; Cooley's Const. Lim. (7ª ed.) 382. En tal caso, la

segunda o subsiguiente ofensa, y no la primera, es la que se castiga." (235 Pac. pág. 82.)

Idéntico ataque se le ha hecho a la Ley Federal de Armas.(²) En el caso de *United States* v. *Platt*, 31 F. Supp. 788, fué rechazada la contención de que dicha ley es *ex post facto* e inconstitucional. Se dice en dicho caso:

"El acusado alega, sin embargo, que la Ley Federal de Armas de Fuego, promulgada mucho después de su convicción por un delito de violencia, es, en cuanto a él se refiere, una ley *ex post facto* en tanto en cuanto altera su situación, para su desventaja, de aquélla que existía al tiempo en que él cometió el delito por el cual fué convicto. Él seriamente alega, a través de los competentes abogados nombrádosle por el tribunal, que de haber él sabido antes de cometer el delito por el cual él fué convicto en la corte estatal en 1933, que en el 1938 el Congreso iba a promulgar una ley exponiéndolo a proceso y castigo por un acto perfectamente legal si fuera realizado por un ciudadano corriente, ese conocimiento tal vez lo hubiera hecho desistir de cometer el primer delito; y que, no obstante los razonamientos de orden legal en casos criminales corrientes, él en efecto está siendo ahora castigado de nuevo por el delito por el cual fué convicto en 1933. Este mismo argumento tal vez no hubiera sido alegado tan seriamente contra actuaciones de criminales habituales, mas pudo serlo.

"La defensa trata de hacer esta distinción: que no es necesario, para poder condenar por actos de criminales habituales, el demostrar una convicción anterior, pero que tal evidencia

---

(²) La sección 2(*e*) y (*f*) de dicha ley—52 Stat. 1250, 15 U.S.C.A. secciones 901–909—leen así:

"(*e*) Será ilegal para cualquier persona que esté bajo acusación o que haya sido convicta de un delito de violencia o que sea un fugitivo de la justicia el embarcar, transportar o hacer que se embarque o transporte en comercio interestatal o extranjero cualquier arma de fuego o municiones.

"(*f*) Será ilegal para cualquier persona que haya sido convicta de un delito de violencia o que sea un fugitivo de la justicia el recibir cualquier arma de fuego o municiones que hayan sido embarcadas o transportadas en el comercio interestatal o extranjero, y la posesión de un arma de fuego o municiones por cualquiera de estas personas será evidencia presuntiva de que dicha arma de fuego o municiones fueron embarcadas, o transportadas, o recibidas, según sea el caso, por tal persona en violación de este capítulo."

entra en juego meramente para afectar o fijar el castigo; mientras que, bajo la Ley Federal de Armas de Fuego, la alegación y prueba de una convicción anterior es *indispensable para condenar*. Esta distinción, empero, no es tal que afecte la aplicación de los principios legales aquí envueltos.

"La Ley Federal de Armas de Fuego simplemente establece una *clase* sujeta a sus disposiciones, a saber, personas que han sido convictas de delitos de violencia; y hace ilegal el recibir, transportar o embarque por dichas personas de armas de fuego, en el comercio interestatal. No tiene por objeto el castigar otra vez *por delitos ya cometidos*. El castigo provisto, en el caso de una convicción, lo es por el delito cometido *después* que el estatuto entró en vigor. Es, por lo tanto, válida frente a la contención de que la misma es *ex post facto*."

La Corte de Apelaciones para el Primer Circuito ha pasada ya sobre esta cuestión en el caso de *Cases* v. *United States*, 131 F.2d 916. Copiamos de dicho caso:

"La Ley Federal de Armas es tan sólo prospectiva. Esto es, bajo la misma, nadie dentro de la clase en ella descrita, puede ser convicto por haber transportado o recibido tanto un arma de fuego como municiones en cualquier momento anterior a su aprobación. En el sentido corriente, no es, por tanto, una ley *ex post facto*. Pero el apelante sostiene que es una ley *ex post facto* en cuanto se aplica a él porque le impone un castigo adicional por un delito que cometió y por el cual fué convicto antes de que la ley fuera aprobada.

". . . . . . . .

"Por la norma indicada la Ley Federal de Armas de Fuego claramente no es una *ex post facto* e inválida bajo el Artículo I, Sección 9 de la Constitución. Examinada la ley en su totalidad, es bien claro que al promulgarla el Congreso no estaba en modo alguno interesado en imponer una penalidad adicional a aquéllos que en alguna ocasión en el pasado fueron convictos de un delito de violencia. En la Ley el Congreso tan sólo se proponía proteger al público evitando la transportación y posesión de armas de fuego y municiones por aquéllos que, por su anterior conducta, habían demostrado su incapacidad para confiárseles instrumentos tan peligrosos y, en verdad, nadie puede seriamente sostener que la norma de incapacidad establecida por el Congreso sea irrelevante con ese propósito. Ciertamente es

razonable concluir que uno que ha sido convicto de un delito de violencia no es la clase de persona a quien pueda confiársele el que posea y transporte armas y municiones, y el hecho de que él se haya reformado o de que en algunos casos la norma pueda operar con dureza, no invalida dicha norma. *Hawker v. New York*, 170 U.S. 189, 197, 18 S. Ct. 573, 42 L.ed. 1002. Véase, también, *McDonald* v. *Massachusetts*, 180 U.S. 311, 21 S. Ct. 389, 45 L.ed. 542."

Numerosas decisiones en otras jurisdicciones sostienen la misma doctrina. Véanse, *Ex parte Brown*, 211 P.2d 293 (Okl. 1949) ; *State* v. *Rowe*, 181 Atl. 706 (N.J. 1935) ; *State* v. *Pius*, 192 Atl. 89 (N.J. 1937) ; *State* v. *Tully*, 89 P.2d 517 (Wash. 1939) ; *People* v. *James*, 235 Pac. 81 (Cal. 1925) ; *Ex parte Morris*, 163 N.Y.S. 907 (N.Y. 1916) ; *People* v. *Smith*, 36 C.A. 88 (Cal. 1918) ; *Ex parte Rosencrantz*, 271 Pac. 902 (Cal. 1928) ; *State* v. *Zywicki*, 221 N.W. 900 (Minn. 1928) ; *Cochran* v. *Simpson*, 53 P.2d 502 (Kansas 1936) ; 132 A.L.R. 91; 139 A.L.R. 673.

Dicha doctrina legal es de aplicación al caso del apelante, por lo que debemos rechazar su contención y resolver, como ahora lo hacemos, que el artículo 4 de la Ley de Armas de Puerto Rico no viola la cláusula *ex post facto*, ni es inconstitucional.

*Debe confirmarse la sentencia apelada.*